UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRED HUMPHREY, et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 1:15-cv-14170-ADB |
| | * | |
| JEFFREY COMOLETTI, et al., | * | |
| | * | |
| Defendants. | * | |

**ORDER ON PLAINTIFF'S MOTION TO AMEND**

BURROUGHS, D.J.

In this civil rights action, Plaintiff Fred Humphrey ("Plaintiff") alleges that he was assaulted and injured by members of the Fall River Police Department during the execution of a search warrant in a private home on December 21, 2012. Before the Court is Plaintiff's Motion to Amend the Complaint. [ECF No. 31]. For the reasons set forth in this Order, Plaintiff's Motion is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>, and Plaintiff is directed to file an Amended Complaint no later than <u>August 16, 2016</u>.

**I.    FACTS ALLEGED IN THE COMPLAINT**

Plaintiff filed his Complaint in this case on December 18, 2015. [ECF No. 1] ("Compl."). The Complaint alleges as follows:

Plaintiff is a resident of Newport, Rhode Island. At the time of the incident, he resided with his two minor daughters, Plaintiffs Taneisha Humphrey (who has now reached the age of majority) and J.B., who is still a minor.

On December 20, 2012, Plaintiff and his business associate, Christopher Stephens ("Stephens"), sold a go-kart to Defendant Jeffrey Comoletti ("Comoletti"). In exchange, Comoletti gave Plaintiff and Stephens an unspecified amount of cash, plus a tablet device. Soon

after, Plaintiff and Stephens realized the tablet did not work.[1] They contacted Comoletti, who allegedly threatened both Plaintiff and Stephens by stating, among other things, that members of Comoletti's family were in the Fall River Police Department.

On December 21, 2012, Comoletti allegedly filed a complaint against Stephens with the Weymouth Police Department. Specifically, Comoletti reported that Stephens was selling AK-47s and marijuana out of his apartment in Fall River. Plaintiff alleges that Comoletti knew these statements were false at the time he made them. On the same day, a Weymouth police officer passed this information on to Defendant William Falandys, a Detective in the Fall River Police Department ("Falandys"). On the basis of this information, Falandys applied for and received a search warrant for Stephens' apartment.

Later that day, Falandys executed the search warrant. He was accompanied by Defendant John Cabral, another Detective in the Fall River Police Department ("Cabral"), and seven unnamed Fall River Police Officers, whom Plaintiff has named as John Doe Defendants.

At the time the search warrant was executed, both Stephens and Plaintiff were inside Stephens' apartment. The officers ordered Plaintiff to lie down on the ground during the search. Plaintiff alleges that as he was getting down on the floor, at least one of the Defendants kicked him in the head several times, causing him to lose consciousness. When Plaintiff regained consciousness shortly after, he asked why he was kicked in the head. Someone allegedly responded that "some people deserved to get kicked." Plaintiff further contends that the officers found no drugs, guns, or other weapons in Stephens' apartment on December 21, 2012.

---

[1] In Plaintiff's Proposed Amended Complaint, this allegation has been amended to state that "the tablet was not worth the value that was represented by Comoletti."

Plaintiff, who is African American, alleges that the majority, if not all of the officers involved in the assault were Caucasian. He further asserts that the Defendants' actions were taken "pursuant to policy, practice and action of the City of Fall River and the Fall River Police Department."

Plaintiff claims that as a result of the incident, he has suffered severe physical injuries and extreme stress and anxiety. Plaintiffs Taneisha Humphrey and J.B. also allege that they have suffered loss of consortium with their father as a result of the assault.[2]

## II.   CLAIMS FOR RELIEF

The Complaint contains eight claims for relief. Count I alleges that Falandys, Cabral, and the seven unnamed Fall River Police Officers (collectively, the "Fall River Officers") violated Plaintiff's rights under the Fourth and Fourteenth Amendments. Count II asserts a corresponding claim against the Fall River Officers under 42 U.S.C. § 1983. Count III alleges that the Fall River Officers engaged in a civil conspiracy to violate Plaintiff's constitutional rights, in violation of 42 U.S.C. § 1985.

Count IV asserts a Section 1983 Monell[3] claim against the Defendant City of Fall River, on the grounds that "it was the custom, policy, and/or practice of the City of Fall River to provide inadequate training and/or supervision to its police officers" regarding "their duties, responsibilities and conduct towards persons of color; use of force; and preventing abuse of authority," and that the City has been "deliberately indifferent" in hiring, training, supervising, and disciplining officers in this regard. Count V purports to assert a claim for "vicarious liability" against the City of Fall River.

---

[2] Although the Complaint contains no separate loss-of-consortium claims, Plaintiff alleges that his daughters suffered from loss of consortium as a result of his injuries.

[3] See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).

Count VI asserts claims against the Fall River Officers under the Massachusetts Declaration of Rights and the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I (the "MCRA").

The claims in Counts VII and VIII pertain to Defendant Comoletti alone. Count VII alleges fraud, based on Comoletti's purportedly false statements to the Weymouth Police Department regarding the existence of firearms and drugs in Stephens' apartment. Count VIII alleges an abuse-of-process claim that is similarly based on Comoletti's threats to Plaintiff and Stephens, coupled with his knowing and intentional provision of false information to the police.

### III.    PROCEDURAL HISTORY

Plaintiff filed his Complaint on December 18, 2015. In April 2016, Defendants Cabral, Falandys, and the City of Fall River filed Motions to Dismiss for failure to state a claim. [ECF Nos. 11, 17]. On May 9, 2016, Comoletti filed a Special Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Mass. Gen. Laws ch. 231, § 59H, the Massachusetts Strategic Litigation Against Public Participation ("Anti-SLAPP") statute. [ECF No. 20]. Plaintiff filed oppositions to each of these motions. [ECF Nos. 28, 29, 30].

Shortly after responding to the motions to dismiss, however, Plaintiff filed the instant Motion to Amend his Complaint. [ECF No. 31]. Plaintiff proposes to (1) add some supplemental facts to his Complaint; (2) dismiss Counts I and VII; and (3) add two new claims against Comoletti for violations of the MCRA and 42 U.S.C. § 1986.

Defendant Comoletti opposes the Motion to Amend. [ECF No. 25]. Falandys, Cabral, and the City of Fall River have not filed any opposition.

### IV.    DISCUSSION

Fed. R. Civ. P. 15(a)(1) provides that a party may amend its pleading once as a matter of course, within 21 days after service of a responsive pleading or a motion under Rule 12(b), (e),

or (f). Otherwise, a party may amend its pleading only with the opposing party's consent, or by leave of court. Here, Plaintiff failed to amend his Complaint within 21 days after the defendants moved to dismiss. Accordingly, he filed a motion seeking the Court's permission to amend.

Rule 15 directs that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should not be granted, however, if "amendment would be futile or reward undue delay." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006).

The Court does not find that Plaintiff has unduly delayed in moving to amend his Complaint. This case is still in its very early stages, and discovery has not yet begun. Thus, defendants would not be prejudiced by an amendment at this point in the proceedings.

Next, the Court examines whether the Plaintiff's proposed amendments would be futile. "In assessing futility, the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno, 443 F.3d at 126.

Plaintiff proposes to add two new claims against Comoletti. First, he seeks leave to add a claim that Comoletti violated the MCRA by threatening Plaintiff and by filing a false police report with the Weymouth Police Department, knowing and intending that this report would be used to obtain a search warrant for Stephens' residence.

Plaintiff also proposes to add certain facts to his Complaint to support this MCRA claim against Comoletti. Specifically, Plaintiff alleges that when Comoletti spoke with Plaintiff and Stephens on December 20, 2012, Comoletti expressly threatened that eight officers from the Fall River Police Department would be at Stephens' apartment. Further, Plaintiff alleges that at the time Comoletti made his false report to the Weymouth Police Department, he was aware that

Plaintiff did not have a residence in Fall River, and that he spent most days in the company of Stephens.

Comoletti opposes Plaintiff's amendment on grounds of futility, arguing that the proposed facts do not make out a plausible claim under the MCRA. "To state a claim under the MCRA, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Farrah ex rel. Estate of Santana v. Gondella, 725 F. Supp. 2d 238, 247 (D. Mass. 2010) (citing Swanset Dev. Corp. v. City of Taunton, 432 Mass. 390, 395 (1996)). Merely proving the deprivation of a constitutional right will not suffice to establish liability under the MCRA. See Bally v. Northeastern Univ., 403 Mass. 713, 718 (1989). Rather, the Act applies only to situations "where the derogation of secured rights occurs by threats, intimidation or coercion." Id. Courts have held that the added requirement of threats, intimidation or coercion was "specifically intended to limit liability under the Act." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565-66 (1995); see also Bally, 403 Mass. at 718 (noting that the Massachusetts Legislature "did not intend to create a vast constitutional tort" in enacting the MCRA) (quoting Bell v. Mazza, 394 Mass. 176, 182-83 (1985)).

Here, Plaintiff alleges that after he and Stephens complained to Comoletti about the tablet, Comoletti threatened them, and specifically warned that eight Fall River Police Officers would show up at Stephens' residence. Presumably, such actions could suffice as "threats, intimidation, or coercion" for purposes of the MCRA. It is not entirely clear, however, how Comoletti intended these threats to dissuade Plaintiff from exercising any constitutional or civil

6

right protected under Massachusetts or federal law. See Goddard v. Kelley, 629 F. Supp. 2d 115, 128 (D. Mass. 2009) (MCRA liability arises when "(1) the defendant threatens, intimidates, or coerces the plaintiff, in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do"). While Plaintiff does allege that his Fourth Amendment rights were violated during the subsequent search of Stephens' apartment, it is not plausible that Comoletti threatened Plaintiff to coerce him into giving up his Fourth Amendment right to be free from unreasonable searches and seizures.

If, however, Plaintiff were to amend his Complaint to set forth a proper factual basis for his MCRA claim, the Court might allow that claim to proceed. Thus, Plaintiff's Motion to Amend is allowed with respect to the MCRA claim against Comoletti. If Comoletti believes the Amended Complaint fails to state a claim on which relief can be granted, he may file a motion to dismiss, and the Court will reconsider this issue at that time.

Plaintiff also seeks to add a claim against Comoletti under 42 U.S.C. § 1986, which "creates a right of action against a party who, 'having knowledge that any of the wrongs' in furtherance of a conspiracy prohibited by § 1985 'are about to be committed,' and 'having the power to prevent or aid in preventing the commission of the same, neglects or refuses to do so.'" Salcedo v. Town of Dudley, 629 F. Supp. 2d 86, 99 (D. Mass. 2009) (quoting 42 U.S.C. § 1986).

Comoletti argues that it would be futile to add such a claim, because the incident in question took place in December 2012, and Section 1986 claims are subject to a strict one-year limitations period. See 42 U.S.C. § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."); Salcedo, 629 F. Supp. 2d at 99 (granting summary judgment on Section 1986 claim, on grounds that claim was barred by one-year statute of limitations). The Court agrees. Where Plaintiff's

Section 1986 claim is clearly time-barred, it would be futile to add such a claim to his Complaint. See Adorno, 443 F.3d at 126-27. Plaintiff's Motion to Amend is therefore denied with respect to his proposed claim under 42 U.S.C. § 1986.

Finally, Plaintiff seeks leave to dismiss Counts I and VII. No party has objected to the dismissal of these counts. Accordingly, Plaintiff's Motion to Amend is allowed with respect to Counts I and VII, and these claims shall be deleted from the Amended Complaint.

## V.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend [ECF No. 31] is DENIED with respect to adding a claim under 42 U.S.C. § 1986, but the motion is otherwise ALLOWED. Plaintiff shall file an Amended Complaint no later than August 16, 2016.

As Plaintiff will be filing an Amended Complaint, Defendants' pending Motions to Dismiss the Complaint [ECF Nos. 11, 17, 20] are DENIED AS MOOT, without prejudice to renew.

Dated: August 2, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE